Gooch v. Young and Wilson. All right, Mr. Mattern. Good morning, Your Honors, and may it please the Court. My name is David Mattern, and I'm counsel for Eric Gooch. This is a case about the Prison Litigation Reform Act and its requirement that a prisoner exhaust available remedies. In this case, the Act is an abar to Mr. Gooch's suit for two reasons, each of which is an independent basis to reverse the judgment below. The first is that the Bureau of Prisons policy requires a particular kind of form to submit an administrative grievance, and Mr. Gooch's correctional counselor denied him that form. That, under this Court's precedence in Dale v. Lapine and Hill v. Snyder, are reasons why administrative remedies are unavailable and why the Act does not bar Mr. Gooch's suit. And the second reason is that, in addition to denying him the form that he needed to The officials also threatened Mr. Gooch, telling him that he, quote, better watch out snitching on staff and that he's going to die if he submitted his complaint. And this Court has also explained threatening an inmate as a reason to deter him from pursuing the grievance process also renders the administrative grievance process unavailable. And in those circumstances, the PLRA also is not a bar to filing a suit. The government tells us that, or the defendants tell us that because Mr. Gooch was not deterred from filing suit, those threats must not have been very powerful. So I don't know. I think that, if anything, this shows the opposite. It shows that Mr. Gooch was so worried for his life that he immediately filed suit to get attention, as he explained in one of his declarations, that he thought it might put him under the Court's protection. Now, Mr. Gooch was proceeding per se, and of course, you know, that maybe wouldn't have had the effect that he thought, but it indicates that Mr. Gooch wanted to make sure that the fact that he was being threatened had someone's attention to essentially get him the relief that prison officials were denying him by refusing to provide him the form he needed to submit an administrative grievance. Mr. Maddern, is there any evidence in the record that the form at issue here, the BP-9, could have been obtained somewhere else besides the counselor? No, and that's because the government didn't put in any evidence at all about this point. Was any discovery conducted? I know the district court, in its order, said a discovery period or said discovery could begin on this particular issue, but it was unclear to me if any discovery took place. And again, the answer is to no, and that ties to a point I would like to make about why we think summary judgment would be appropriate to award to Mr. Gooch, which is because the including if it wanted to conduct discovery. But did your client move for summary judgment? He didn't, no. So how could we grant summary judgment for him when he didn't move? So our argument for that is that district court has authority to correspond to order summary judgment under Federal Civil Procedure 56F, and there are a couple cases we said in our briefs where an appellate court has ordered this disposition on remand. And the reason why I think this is appropriate in these circumstances is the argument we're The ale was from 2004, the hill is from 2016, and so the government was on notice at the time that this case was filed in early 2019 of what the law looked like. Mr. Gooch in his complaint identified that the reason why he wasn't required to exhaust, which by the way, isn't something he has to even... Right, but the government's position, as I understand it, is they just don't believe him. Yeah, but they didn't put any evidence on that. And so they might have the belief of the government's attorney, but they didn't submit any evidence that would corroborate that speculation. And so they didn't, for example, ask his correctional counselor to submit a declaration, which is something the government could have done at the time. And since they waived that opportunity... That would not be the stuff of summary judgment, however. Right, which is... That would be the stuff of a payee hearing. Right, which is why the government should have elected that instead of proceeding the way it did, in our view. Is that the same argument regarding the workaround procedure for these sorts of sensitive situations that the regulations give the option of going directly to the regional director? Do we need more of a record on that? So I don't think so, Your Honor. And the reason for that is I think that the regulations are unambiguous, that they still require the same VP-9 form to be submitted, either if it's submitted to the warden or as part of the workaround procedure to the regional director. And we just don't know what avenues for obtaining the VP-9 form were available to your client, other than the counselor? It's just a gap in the record. Your Honor, I believe that the... I wouldn't characterize it as a gap. I would say that Mr. Gooch put in evidence that the route available to him was to ask his correctional counselor for a form, and that his correctional counselor denied that evidence. And the government's attorneys have made different arguments on appeal, but they didn't put any evidence in their record. And so I wouldn't say it's a gap. I would say that the evidence is actually uncontested in Mr. Gooch's favor, that the only avenue available to him was denied. I'm happy to answer any further questions from Your Honors, but if there are no more, I'd like to save some time for rebuttal. That's fine. Thank you. Ms. Shields. Good morning, Your Honors, and may it please the Court. Gina Shields for Lieutenant Young and Officer Wilson, BOP employees sued in their individual capacities. The determinative question on this appeal is whether administrative remedies were available to Mr. Gooch that he failed to pursue. The answer to that question is yes for several reasons. First, Mr. Gooch mailed his complaint to federal court a mere three days after the fight that forms the basis of his claims. Because he was in the Special Housing Unit, the only way he had access to mail, postage stamps, paper, and writing utensils is if he interacted with staff to obtain those items. Thus, he had access to staff and access to the mail. But that doesn't address the question of the form, the BP-9 form, and the fact, which is uncontested, that any kind of grievance, including the workaround procedure to the regional director, had to be submitted on the BP-9 form. The regulations aren't clear on that point, whether you need a specific BP-9 form or whether you could do it on, for instance, a BP-10. For the initial grievance or to the regional director or both? Sorry, for the regional director. But you didn't seem to dispute that below. I think we're hearing this for the first time on appeal. Yes, Your Honor, and that was an oversight on my part. But the regulations are unclear. To submit a BP, to submit a sensitive remedy, you can do that. But if it's undisputed below, how can we? Well, under the district court? Yes. They never made that argument in front of the district court. That's the problem here. The argument was that they needed to submit the grievance on the BP-9, and his counselor said, I'm not going to give it to you. He never said, one, he never identified it as a BP-9. He said the requisite form. He surely would not have to, would he? He just has to say, I need a grievance form, right? Well, yes. It's up to the counselor to know what kind of form is needed, right? Well, technically, given that this happened the day after the fight, the reasonable interpretation of it was a BP-8 form. That's the form that you need to begin the informal resolution process. Then you have to complete BP-9 all within 20 days. Now, if he went below to the district court, he said, the counselor refused me the form to begin the administrative process. He never said, the regulations require me to have a BP-9, whether I'm filing with the institution or whether I'm filing with the regional director. If he had made that argument, we could have put it in evidence to say, no, look, the region may accept BP-9, may accept BP-10. In your view, Ms. Shields, is it sufficient to show a failure to exhaust if the Bureau of Prisons comes forward and says, in essence, we're not as rigid and unreasonable as our regulations might look like. We're not as bureaucratic as that. We'll waive the time limits for good cause, and you don't have to submit it on the form that you're supposed to get from your counselor. We're reasonable folks. Is that sufficient, in your view, to defeat or to show a failure to exhaust? Your Honor, I think potentially. In this case, we have rejected that argument time and again from both the Bureau of Prisons and its employees and from State Departments of Corrections and their employees where they write their rigid rules and insist that we enforce them and district courts enforce them time and again. And then when they screw up in terms of availability, as is alleged in this case, say, oh no, we're going to be reasonable. Your Honor, this is not that case. There are, in the regulations, there are ways that he could have attempted to exhaust his administrative remedies. Without the form? If he filed anything with the region, even if it wasn't on a BP-9, a BP-10, the region would have processed it. Where do we find that in the regs? In the regulations. If you look at 28-542-17, it does not say that specifically in the regulations. However, it does per se that if a remedy is rejected, the region must provide the inmate with a written notice and an explanation for why it's being rejected. If the error is correctable, the region shall give them time to correct the error. And he's supposed to figure this out, that what that really means is I don't have to use the form that the regulations require. Well, we don't know because he didn't try. He didn't go to the region, even though he had access to the mail. Three days after this happened, he makes a beeline to federal courts. And the program statement also gives the region flexibility, especially with sensitive remedies. Sorry, what's the program statement? The BOP program statement, 1330-18, it was cited. It's publicly available, so it was cited in a footnote in our brief as well. Is that available to inmates? Yes. That is one of the program statements that is available to inmates. And what does that say that you think is important here? It says under the part that discusses Regulation 28-542-17 that when deciding to reject a submission, coordinators, especially at the institutional level, should be flexible, keeping in mind that major purposes of this program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a request or appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely. But that doesn't say anything about the form that it comes in on. And Regulation 542-14C says the inmate shall obtain the appropriate form from CCC staff or institution staff. So Mr. Gooch asked for the form once on day one of his 20-day period. He never asked for the form again. Take him at his word that the response was, you're going to get yourself killed if you do this. You're going to get hurt. How many more times? Who else is he supposed to ask? The regulations have a sensitive remedy procedure. He also could have asked in the SHU, executive staff make daily rounds. He could have said it to the warden. He could have said it to the administrative remedy quarter. He could have said it to his unit team manager. So how many of those does he have to try to do that? What do you think is required? I don't know the answer to that. Don't you think a prisoner is entitled to know the answer to that question? I think the inmate has to wait and ask more than once. I think he has to wait at least the 20 days. Where does that come from? Your sense of reasonableness and purpose or from the regs? I think it comes from the purpose of the PLRA itself. It is to reduce oftentimes frivolous prisoners. Yes, and the PLRA has a very strict exhaustion requirement for available remedies. And what you're asking for is strict enforcement when you want it and reasonable, flexible, purpose-driven enforcement when you want that. Right? Well, I think under the facts of this case, when he makes a beeline to federal court three days after the incident that forms the basis of his complaint, that that is thwarting the purposes of the PLRA. When the BOP regulations provide him other avenues of accessing the administrative remedy process. When he says here, we're at summary judgment on this issue. No discovery was done by the government. He puts in an uncontested affidavit that says, I asked my counselor for the form like I'm required to under the regulations. The counselor wouldn't give it to me, and I was threatened and said I would be killed if I continued to pursue this. So there's nothing on the other side, no evidence saying, well, the affidavit from the counselor saying that's not what happened, creating an issue of fact for payee hearing. We just have an uncontested affidavit saying they wouldn't give me the form and they told me if I tried to pursue this, I was going to be killed. How can we say that he has not exhausted his administrative remedies under those uncontested facts here? Well, Your Honor, procedurally what happened is he files his complaint. He says in there administrative remedies are unavailable to me because I requested all the steps of the administrative remedy process and they were denied. We raise exhaustion. We then are given an option from the district court. You can file a dispositive motion on this issue. You can request a payee hearing, or you can withdraw the defense. Defendants filed a motion for summary judgment specifically addressed. But there was also in that same order discovery was permitted, and you didn't do any discovery to counter the facts. If I may, Your Honor, we specifically addressed the allegation he made in his complaint where he said I was denied remedies at all level. We addressed that in our summary judgment motion. It takes 90 days to do that. He runs the federal court three days after the incident. That forms a basis for his complaint. But exhaustion is an affirmative defense. He doesn't have to plead around it. It comes down to the facts, and he puts it in an affidavit that is essentially uncontested. Your Honor, if we conduct discovery every time they raise exhaustion, this is a case where he ran to federal court three days after the fight that forms a basis of his complaint. Because he has alleged and then put in uncontested evidence, and maybe it's not true but it's all we have to work from in the record, that they wouldn't give him the form and they said they were going to kill him if he pursued it. And now you're saying, well, he should have continued to pursue it. Well, Your Honor, that is not what he never made those allegations in his initial complaint. That's utterly beside the point, as is the three days point that you keep repeating. Your Honor, I respectfully request that the district court's ruling be affirmed in all respects. Thank you. All right. Thank you very much. Mr. Madren. Thank you, Your Honors. So first I want to note on the point about what Mr. Gooch put in his complaint, even though he didn't have to plead exhaustion, he stated specifically that prison staff refused me the forms that he needed to pursue his administrative grievance process. So the government was on notice from the complaint itself that the basis for Mr. One of the bases for Mr. Gooch's exhaustion complaint was that he was refused the form. The complaint was verified? The complaint was verified. Although I do want to point out that there's a footnote in the district court opinion that says that the complaint is not verified, but that's actually not true. It's a little bit disjointed, but it's split between S.A. 11 and S.A. 12. You can see where he verifies it under penalty of perjury. And the second point that I would like to make is just about the regulations and that it's, I think, unambiguous from the text of the regulations themselves that the BP-9 form is required, whether you submit the administrative grievance to the regional director or to the warden. And that's because there's only one part of the one subsection in that regulation that sets out the requirements of the form. It calls it an administrative remedy request. And then the provision continues to refer to that request through the rest of the provision, including in the section that's about the sensitive issues exception. And so I think it's unambiguous from the text of the regulation that a form is required for either person. And I'm happy to answer any further questions, but if not. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.